# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN PENA, | : Civil No. 3:19-cv-01536 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| KEVIN CLARK, et al., | : |
| Defendants | : |

## **MEMORANDUM**

### I. **Background**

On August 20, 2019, Plaintiff, Jonathan Pena, an inmate, currently confined in the State Correctional Institution, Houtzdale, Pennsylvania, initiated this civil rights action, pursuant to 42 U.S.C. § 1983, in the Schuylkill County Court of Common Pleas. (Doc. 1, complaint). Plaintiff challenges a disciplinary hearing he received at his former place of confinement, the Mahanoy State Correctional Institution ("SCI-Mahanoy"), Frackville, Pennsylvania, in which he was found guilty of possession of drug paraphernalia and sanctioned to 210 days in the Restricted Housing Unit. *Id.* Specially, he claims a violation of his Due Process rights when Defendants allegedly issued him a fraudulent misconduct and then misrepresented the evidence at his hearing. *Id.* For relief, Plaintiff seeks compensatory and punitive damages for Defendants' alleged violations of Plaintiff's Eighth and Fourteenth Amendment rights. *Id.* Named as Defendants are the following SCI-Mahanoy employees: Lieutenant Kevin Clark, and Correctional Officers T. Waters and A.

Fritzinger. *Id.* By Notice of Removal dated September 5, 2019, the action was removed to the United States District Court for the Middle District of Pennsylvania. *Id.*

Presently pending before the Court is Defendants' motion for summary judgment. (Doc. 33). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will grant the Defendants' motion.

## II. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Statement of Material Facts

3

On October 16, 2017, Lt Clerk issued Plaintiff Misconduct Report No. B964764 for Possession or Use of a Dangerous or Controlled Substance; Gambling or Possession of Gambling Paraphernalia; Possession of Contraband (Drugs); Lying to an Employee; and Failure to Report the Presence of Contraband. (Doc. 40-4 at 24, Misconduct Report). Plaintiff was confined to the Restricted Housing Unit (RHU) pending action by the Hearing Examiner. *Id*.

On October 20, 2017, Plaintiff appeared for his Disciplinary Hearing. (Doc. 40-4 at 27-31, Disciplinary Hearing Report). At the outset of the hearing, Pena pled guilty to Gambling or possession of Gambling Paraphernalia. *Id*. At the conclusion of the hearing, the Hearing Examiner dismissed the charge of Possession of Contraband and found Pena guilty of all the remaining charges. *Id*. He sanctioned Pena to 210 days of Disciplinary Custody and loss of his job. *Id*.

On October 22, 2017, Pena filed a Misconduct Hearing Appeal, raising the following:

> A dip stick is for when they think you are taking drugs, not for paper, because that is what they took from me and said that on the 7 little pieces of ½ x ½ papers was something on them that they say was some type of Suboxone mix on the paper. So, I know that nothing is on the paper, so can I please get a copy of that test kit? Because if some pieces of paper turning purple indicates Suboxone, I know that it turning purple, because the paper was purple, so what other color it was going to turn? So, can you please look into this and send me a copy please? I also got more charges with this and I play (sic) guilty to Class B #31, but I got 210 for this. May I get time cut or send me to a new jail?

(Doc. 40-4 at 26). By Decision dated November 2, 2017, the Program Review Committee

4

sustained the decision of the Hearing Examiner, and the sanction was upheld as follows:

> PRC has reviewed the available information concerning this misconduct including the report of Lt. Clark, the finding of the Hearing Examiner and Inmate Pena's appeal.
>
> PRC finds the following:
>
> In your appeal you claim that the procedures employed were contrary to law, Department directives, or regulations; however, you do not provide any evidence in your grievance to support a finding, and in review, there does not appear to be any violations of the above.
>
> You also claim in your appeal that the punishment you received, 210 days Disciplinary Custody, is disproportionate to the offenses; however, they are with the guidelines established in the DC-ADM 801 for your misconduct charges of #22 Possession or use of a dangerous or controlled substance, #31 Gambling or Possession of Gambling Paraphernalia, #42 Lying to an Employee and #45 Failure to Report the Presence of Contraband.
>
> You also claim that the findings of fact were insufficient to support the decision. The Hearing Examiner is the original fact finder. It is not the purpose of the PRC to rehear the evidence or substitute its judgment in place of the Hearing Examiner's. The Hearing Examiner based findings of fact during the hearing from the evidence presented in the Misconduct Report DC-141 Part 1 and Part 2(C). This was clearly noted in the Hearing Examiner's Disciplinary Hearing Report DC-141 Part 2(B).
>
> Therefore, the decision of the Hearing Examiner is sustained, and the sanction is upheld.

(Doc. 40-3 at 3, Program Review Committee Action).   No further appeal or other administrative remedy was filed.   (Doc. 40-4 at 35, DOC Misconduct Tracking System).

## IV. <u>Discussion</u>

Defendants seeks the entry of summary judgment based on (1) Plaintiff's failure to

5

exhaust his administrative remedies prior to bringing the instant action; and because (2) Plaintiff's underlying claims fail on the merits as a matter of law. The Court agrees.

### A. Exhaustion

Defendants seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, — U.S. —, —, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust-irrespective of 'special circumstances.' " *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. *Ross v. Blake*, — U.S. —, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This applies when the procedure 'operates as a simple dead end—with officers unable or

6

consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' *Id*. at 1859-60." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. Notably, prison administration must also comply with the demands of the system. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365.

Applying this rule to Pena's case, it is clear from the record that he failed to exhaust his remedies as to the October 16, 2017 misconduct he received. The DOC has a policy, DC-ADM-801, that provides for a three-step appeal process when an inmate is found guilty of misconduct. (Doc. 40-4 at 10-18, DC-ADM 801, Inmate Discipline Procedures Manual).

7

An inmate who is found guilty of a misconduct charge and who disagrees with either the finding of guilt or the sanction imposed may file an appeal with the Program Review Committee ("PRC") at his institution within fifteen calendar days of his hearing. *Id.* The inmate may appeal the decision of the PRC to the Facility Manager/designee within seven calendar days of receipt of the written PRC decision. *Id.* The decision of the Facility Manager/designee shall be in writing and shall be forwarded to the inmate with in seven working days of receipt of the appeal. *Id.* The inmate may appeal the decision of the Facility Manager/designee to the Chief Hearing Examiner, within seven calendar days of the receipt of the Facility Manager/designee's decision. *Id.* The Chief Hearing Examiner's Officer shall review and respond to every misconduct appeal to final review within seven working days of receipt of all necessary records. *Id.*

The record reveals that on October 22, 2017, Plaintiff filed an appeal from his October 20, 2017 misconduct hearing to the PRC. This appeal was received by the PRC on November 30, 2017. By Committee Action dated November 2, 2017, the decision of the Hearing Examiner was sustained, and Plaintiff's sanction was upheld. The record reveals no further appeal was filed.

In his brief in opposition, Plaintiff states that "the PLRA failure to exhaust is inapplicable to this Plaintiff where he filed a Level 2 appeal of which he never received a response to and failed to receive his original paperwork (appeal papers) back to him." (Doc. 51 at 2). Thus, he concludes that "Defendants and/or the DOC cannot intentionally subvert his appeal attempts and then have a subsequent civil action dismissed for failing to exhaust administrative remedies." *Id.* Although Pena avers that he filed a second level

8

appeal to the Facility Manager, but received no response, his averment is impermissibly vague, and he has produced no documentary evidence to support such a claim. He cannot rely on an unsubstantiated conclusory allegation in order to defeat a motion for summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that party opposing motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [ ] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (citing Celotex, 477 U.S. at 322, 106 S.Ct. 2548).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. *Powell v. McKeown*, No. 1:20-cv-348, 2000 WL 4530727, *13 (M.D. Pa. Aug. 6, 2020). An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Thus, it is evident from the record that Plaintiff failed to follow the procedural requirements of the grievance procedure and appeal

9

the PRC's denial to the second level of review.

Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. *See Spruill v. Gillis*, 372 F.3d 218, 222-26 (3d Cir. 2004). Plaintiff's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In *Spruill, supra*, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)." *Id*. at 231, 232.

In this case, the record clearly discloses that Pena failed to exhaust his administrative remedies with respect to the claims raised herein. Thus, Pena has sustained a procedural default with respect to his claims.

*Spruill* cited with approval the Seventh Circuit decision in *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *Spruill*, 372 F.3d at 231. In *Pozo*, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025 (emphasis added). Pena offers no evidence to justify his failure to comply with the exhaustion requirements. Consequently, he is now foreclosed from litigating his remaining claims in this Court.

10

In *Spruill*, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In *Pusey v. Belanger*, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied *Spruill* to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In *Berry v. Kerik*, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in *Pozo*, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants. Notwithstanding Plaintiff's failure to exhaust available administrative remedies, the Court will address the merits of Plaintiff's claims.

**B. Eighth Amendment – Cruel and Unusual Punishment**

Plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated by his placement in disciplinary custody. (Doc. 1-2 at 7). Defendants argue that Plaintiff's claim is not cognizable because, *inter alia*, he has failed to show a serious deprivation. The Court agrees.

11

In order to state an Eighth Amendment claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994). To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. *Hudson v. McMillen*, 503 U.S. 1, 8–9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

In applying this test, the Court acknowledges that "[t]he Constitution ... does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298. " '[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment.' " *Clifton v. Robinson*, 500 F.Supp. 30, 34 (E.D. Pa. 1980), quoting *Burns v. Swenson*, 430 F.2d 771, 777 (8th Cir. 1979). Moreover, "the indefinite duration of the inmates' segregation does not render it unconstitutional." *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999). The length of time that a prisoner must go without benefits is "simply one consideration among many" in the Eighth

12

Amendment inquiry. *Hutto v. Finney*, 437 U.S. 678, 687 (1978). However, placement in the restricted housing unit, without more, does not violate the Eighth Amendment. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); *see also Ball v. Beard*, 2011 WL 1304621 at *3 (M.D. Pa. 2011).

Additionally, to the extent that Plaintiff claims that he was subjected to harassing and threatening statements from the Defendants, although they may be insensitive, words alone are insufficient to establish a constitutional violation. *See, e.g., Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004); *Wilson v. Horn*, 971 F. Supp. 943, 948 (E.D. Pa. 1997) ("The verbal abuse and harassment of which he complains, although not commendable, does not rise to the level of a constitutional violation."), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (table).

Because Plaintiff's Eighth Amendment claim regarding the conditions of his solitary confinement fails to identify any "illegitimate" deprivation of a constitutional right, Defendants are entitled to judgment on this claim.

### C. Fourteenth Amendment Due Process

Plaintiff alleges that his due process rights were violated in the context of the disciplinary hearing. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend XIV. Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). Where this protected liberty interest is at stake,

due process guarantees mandate that prisoners receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Because plaintiff did not suffer a loss of good conduct time, the *Wolff* protections are inapplicable.

Moreover, the due process clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges, insofar as these other forms of discipline do not "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002) (citing *Hewitt v. Helms*, 459 U.S. 460, 484 (1983) ). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of liberty contemplated by Pena and necessary to trigger due process protections. *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *see Griffin*, 112 F.3d at 706-07 (administrative custody for a period of fifteen months with strict limits on property, visitation, and out-of-cell activities did not implicate inmate's due process rights).

Because Plaintiff's 210-day disciplinary segregation and loss of job do not impose an atypical and significant hardship on Plaintiff relative to the ordinary limitations of prison life, Defendants are entitled to summary judgment as a matter of law on Plaintiff's due process claim arising out of disciplinary proceedings.

Additionally, Defendants are also entitled to judgment as a matter of law as to

14

Plaintiff's allegation that he was unjustly transferred to another institution. It is well settled that an inmate "has no justifiable expectation that he will be incarcerated in any particular State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

### D.   Heck v. Humphrey

The sanctions levied against Pena during his disciplinary hearing, were all imposed as a result of prison misconduct. As such, the Court finds that any Fourteenth Amendment claim regarding his disciplinary hearing is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). Under some circumstances, a prisoner may bring a civil rights claim for monetary damages based on the denial of due process during a prison disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (stating that plaintiff's § 1983 "damages claim was ... properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct"). However, such due process claims cannot be brought in an action where the claims "necessarily imply the invalidity of the punishment imposed" unless the plaintiff shows that the sanctions have been overturned. *See Balisok*[1] , 520 U.S. at 648 (finding claims for declaratory and

---

[1]   In *Edwards v. Balisok*, the Supreme Court applied the lessons of *Heck* to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.

15

monetary relief based on allegations that plaintiff was denied opportunity to present a defense and that hearing officer was biased could not be brought pursuant to § 1983); Heck, 512 U.S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."). There is no indication of record that the challenged misconduct has been reversed or expunged. As such, Defendants are entitled to summary judgment.

### E. Deprivation of Property

Plaintiff claims that Defendants "took Plaintiff's 19 pack of Newports and 19 packs of Kite Tobacco without following the Doc Policy relating to confiscation of items and cause Plaintiff the loss of his property." (Doc. 1-2 at 6).

Plaintiff is alleging a Fourteenth Amendment deprivation of property without due process claim. However, his claim is not actionable under 42 U.S.C. § 1983. See Coulson v. Mooney, 2015 WL 1034632 (M.D. Pa. 2015) (dismissing the complaint on screening because the plaintiff had an adequate post-deprivation remedy to address his claim that his cellmate deliberately destroyed his television and other personal property).

---

Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

16

The Supreme Court of the United States has held that neither negligent nor intentional deprivations of property violate the Due Process Clause if there is a meaningful post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527, 530 (1981). The Third Circuit Court of Appeals has "held that the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process." *Barr v. Knaueer*, 321 Fed. Appx 101, 103 (3d Cir. 2009) (citing *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir. 2000)). *See also Griffin-El v. Beard*, 2010 WL 1837813 (E.D. Pa. 2010) (concluding that a "prisoner's 'failure to [properly] avail himself of such remedy does not affect its adequacy as a post-deprivation remedy' "). Additionally, "the failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Gordon v. Vaughn*, 1999 WL 305240 (E.D. Pa. May 12, 1999) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995)).

Moreover, Plaintiff has another post-deprivation remedy, namely a state conversion action. *See Crosby v. Piazza*, 2012 WL 641938 (3d. Cir. 2012) (holding that to the extent an inmate "is dissatisfied with the outcome of the administrative process, he may still file a state court tort action"); *Reavis v. Poska*, 2010 WL 2511379 (W.D. Pa. 2010) ("Plaintiff, cannot as a matter of law, make a claim under the Fourteenth Amendment for a deprivation of property without due process" because the DOC's "internal grievance procedure and the availability of a state tort suit in state court provide adequate post deprivation remedies."); 42 Pa.C.S.A. § 8522(a), (b)(3).

As discussed, if a meaningful post-deprivation grievance procedure is available,

17

regardless of whether the result of this grievance procedure is favorable to the plaintiff, the plaintiff will not have a claim for a violation of the Due Process Clause of the Fourteenth Amendment. Therefore, in accordance with the aforementioned precedential case law, Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment deprivation of property claim.

## V. Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment for Plaintiff's failure to exhaust administrative remedies and because Plaintiff's claims lack constitutional merit as a matter of law.

A separate Order shall issue.

Dated: September 28, 2021

Robert D. Mariani
United States District Judge